PHILIP HEXAMER, PLAINTIFF IN ERROR, v. CHARLES M. SONTHAL, DEFENDANT IN ERROR.

When a horse in charge of a livery stable keeper becomes sick, it is his duty either to see that proper treatment is furnished to the animal, *i. e.*, such treatment as reasonable care and skill would dictate, or else to give immediate notice of the sickness to the owner.

On error to the Hudson Circuit.

For the plaintiff in error, *John C. Besson.*

For the defendant in error, *Wm. S. Stuhr.*

DIXON, J. The defendant was the keeper of a livery stable at which the plaintiff's horse boarded. The horse having died while in the defendant's charge, the plaintiff brought this suit for damages, insisting that death resulted from the improper conduct of the stableman. He obtained a judgment which the defendant has removed to this court by writ of error.

The first ground relied on for reversal is that the judge at the trial refused to non-suit the plaintiff or direct a verdict for the defendant, for want of sufficient evidence to sustain the action.

The testimony on behalf of the plaintiff was, first, that of the stableman, that on the morning of September 9th, he had given the horse three-quarters of a loaf of dry, stale, rye bread, that at noon the horse refused his feed and hung down his head, and the stableman thought he had colic; secondly, that of the plaintiff himself, that about seven o'clock in the evening " the horse's entrails and stomach moved in terrible pain, he was twice as large as natural, and seemed likely to tumble down every minute;" thirdly, that of a veterinary surgeon, that bread is not proper food for a horse, and if old and dry will be positively injurious, will produce colic, fermenta-

tion in the stomach and bowels, among the symptoms of which are acute pain and swelling of the abdomen, and that colic is often fatal; and fourthly, the death of the horse early on September 10th.

This testimony warranted the submission of the case to the jury, and there is no error in this regard.

The other ground for reversal is that the judge misdirected the jury, in charging as follows: "It was the duty of the defendant, when this horse became sick, to see to it that proper treatment was furnished, or at least to give to the owner notice of the condition, immediate notice, that he might provide for the treatment of the animal. If there was a failure in this, then on legal ground there is liability." The defendant insists that "immediate notice" was not legally requisite, but only notice within a reasonable time.

It may be conceded that of itself the word "immediate" is stronger than the expression "within a reasonable time," (Cockburn, C. J., in *Queen* v. *Justices of Berkshire*, 4 *Q. B. Div.* 469), and yet a multitude of emergencies might be suggested in which an act, to be done within a reasonable time, must be done immediately. One of these was that dealt with by the judge at the trial. He was speaking of the defendant's duty to notify the plaintiff, not as an absolute obligation, but as alternative to his duty of furnishing proper treatment for the sick horse. This latter duty the defendant had assumed when he took charge of the animal, and it was not laying down too strict a rule to say that he could not be discharged from it without notifying the owner. If for any cause not within the defendant's control the owner could not be notified, then the defendant's primary duty remained to furnish to the horse proper treatment, *i. e.*, such as reasonable care and skill would dictate. But a reference to subsequent parts of the charge makes it quite clear that the judge could not have been understood by the jury as exacting more than reasonable diligence from the defendant. The sentences following that already quoted are: "The stable-keeper might not be willing to determine for himself who should be the veterinary surgeon

to be called in a given case, but it was the duty of his servant, when he found the horse was sick, to give notice so that the master might know of the sickness.    It was then the duty of the master to see to it that the horse was properly treated, or if he was unwilling to make choice himself of the person to treat it, it was his duty promptly, with reasonable diligence, to see that the owner was notified, that he might take measures for its safety and relief.    *    *    *    If the master failed to exercise reasonable care and diligence in giving the owner notice of the sickness of his horse, and thereby the horse was lost, he became answerable for that."

These directions put the duty of the defendant upon the legal footing.

We find no error, and the judgment must be affirmed.

PATERSON, J. (dissenting).    I think the judgment in this case should be reversed, because the evidence against the loss of the animal being attributed to improper treatment or neglect on the part of Hexamer is overwhelming in character.    All I can discover in the testimony to show that the horse died of colic is the statement of the hostler, who said, " I think he had the colic."    Absolutely, there is nothing besides to sustain the theory.    The veterinary surgeon, called in by the owner, was examined on the part of the defendant at the trial, and negatives very emphatically the assertion of death having resulted from that cause.    Nor does the expert produced by the plaintiff sustain the allegation in this respect.    My opinion is that the proof here is of the weakest kind, and should form no basis of recovery.

Nor does the charge of negligence rest on any better ground. From the testimony of the hostler it appears that the animal was given the usual care and attention in the stable on returning there after being driven for the last time.    It is evident also that as soon as symptoms of ailing became visible the foreman of the establishment was notified, and the animal watched specially, and examined by the son of Hexamer, who had taken instructions in the veterinary art.    When the horse

continued to refuse to eat, and other symptoms were developed, word was sent to the plaintiff. He called in the doctor, who was examined on the trial, and whose prescriptions and directions were carried out. Up to that time the horse had been quiet, and did not kick around or roll. Notice was given to the owner, when the defendant, who personally had the animal under his eye, and who had experience in the care and treatment of horses, saw the necessity of doing so. Was this sufficient under the circumstances and facts of the case? It is the only point on which a question could be raised. In my judgment, it was reasonable, though an earlier notification might have been wiser as a matter of precaution. Besides, the record shows that this is one of those cases where loss might have arisen from a cause other than negligence, for the evidence is more consistent with that than with the idea of death resulting from colic.

The judgment should be reversed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, REED, SCUDDER, CLEMENT, MCGREGOR. 7.

*For reversal*—DEPUE, VAN SYCKEL, BROWN, PATERSON, WHITAKER. 5.